IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-cr-74 (GMS) |
| | ) | |
| DASHUNDA L. HARMON, and | ) | |
| VANESSA SINGLETARY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

**I.     INTRODUCTION**

On December 8, 2014, a jury convicted Dashunda L. Harmon ("Harmon") and Vanessa Singletary ("Singletary") (collectively, "the Defendants") of Conspiracy to Commit Armed Bank Robbery, in violation of Title 18, United States Code, Section 371; and Armed Bank Robbery and Aiding and Abetting, in violation of Title 18 United States Code, Sections 2113(a), 2113(d) and 2. (D.I. 15.) The Defendants have moved for a new trial, arguing that testimony elicited during trial by co-defendant Phillip Yates ("Yates") constituted perjury and that the Government violated their rights to due process and a fair trial.[1] (*See* D.I. 156; D.I. 157.) Harmon has also moved for an Order of Acquittal pursuant to Rule 29. (D.I. 157.) Presently before the court are the Defendants' Motions for a New Trial and Harmon's Motion for an Order of Acquittal. (D.I. 156;

---

[1] Defendant Harmon's Motion for Order of Acquittal incorporates by reference Defendant Singletary's Motion for a New Trial (*see* D.I. 157 at 15). As such, the court considers the Motion for a New Trial on behalf of both defendants.

D.I. 157.)

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2014, Singletary and Harmon went to trial on two Counts: Conspiracy to Commit Armed Bank Robbery, in violation of Title 18, United States Code, Section 371; and Armed Bank Robbery and Aiding and Abetting, in violation of Title 18, United States Code, Sections 2113(a), 2113(d) and 2. (D.I. 15.) Following a six-day trial the jury returned a verdict of guilty on both counts against both Singletary and Harmon. (Trial Transcript ("Tr.") 1203:7–23.)

The case against Singletary and Harmon arose out of an armed bank robbery committed by co-defendants Yates and Larry Pierce ("Pierce") at the M&T Bank branch on East Lebanon Road in Dover, Delaware on May 6, 2013. Testimony adduced at trial established that Singletary and Harmon met the men and joined them in a rented silver Chevrolet sedan prior to the robbery. Singletary and Harmon did not dispute driving Yates and Pierce to a location near the M&T Bank. As a defense to criminal involvement, the women testified that they had no knowledge of Yates and Pierce's plan to rob the bank. Immediately following the robbery, Singletary and Harmon were arrested fleeing from police by members of the Delaware State Police ("DSP"). (*See* Tr. 564:13-16.) Yates and Pierce both pled guilty to the charges filed against them in connection with the armed bank robbery. (*See* D.I. 78; D.I. 87.)

On the second day of trial, the United States called Yates to testify pursuant to a cooperation plea agreement. The Defendants' motions pertain to testimony elicited from Yates on

2

cross-examination. As such, the court will briefly summarize the relevant portions of Yates' direct examination testimony relevant to this Order.

Yates testified that he heard Pierce call Singletary on the Monday morning of the robbery, May 6, 2013, and asked her to drive for him. (Tr. at 327.) After the four met at the Walgreens in Harrington, Delaware later that morning, Pierce told Yates that he had "put them [Singletary and Harmon] down with the situation." (*Id.* at 333.) The four eventually combined into one car. (*Id.* at 336.) They later switched seats with Harmon in the driver seat and Singletary in the passenger seat while the men sat in the rear of the vehicle. Pierce retrieved guns from the compartment behind the car radio while seated in the back seat. (*Id.* at 339.) Harmon and Singletary agreed to remain with the parked car on Richardson Circle and to wait for Pierce and Yates to return on foot. (*Id.* at 342.)

At the beginning of Yates' testimony, the United States authenticated and entered into evidence, without objection, a post-*Miranda* video recording that took place between Yates and the Delaware State Police ("DSP") after his arrest on the afternoon of May 6, 2013. (*Id.* at 281:20-283:22.) During the DSP interview, Yates was asked about his prior criminal conduct and what, if anything, he would be willing to do with respect to cooperation. (*Id.* at 287:8–20.) Yates mentioned that he would be able to cooperate against heroin dealers, but was initially reluctant to cooperate against his co-defendants in this case. (*Id.*) Yates denied being a drug dealer. (*Id.*) On cross-examination, Yates was confronted with text messages that suggested he was involved in selling drugs. The Defendants rely exclusively on this cross-examination testimony to support their motions. A number of questions were posed by defense counsel to Yates related to text

3

messages on his phone which, the Defendants assert, clearly establish Yates to be in the business of selling drugs at the time of the May 2013 bank robbery.

Prior to the fourth day of trial the court held an in-chambers conference to discuss certain evidentiary issues that developed through the first three days of testimony. The defense presented their objections as to Yates' "layered perjury" during cross-examination. (*Id.* at 715:6–14.) Counsel for Harmon argued that "the government should be put on notice" because, in his view, the United States was "deciding to somehow continue to give some degree of credibility" to a witness who in his opinion "lied during the very trial." (*Id.* at 714:22–25.) Neither defense attorney made a motion to strike the testimony of Yates at that time.

The court re-raised the issue in order to address what it perceived as an accusation made against the United States. (*Id.* at 1047:9–13.) Later, the court addressed the issue again in open court. Defense counsel articulated for the court their belief that if perjury had occurred any continued prosecution was impermissible. (*Id.* at 1057:11–20.) The court reconvened the discussion in chambers. At that time, the court sought clarification from the defense as to precisely what testimony they felt constituted perjury. (*Id.* at 1064:2–4.) Defense counsel directed the court's attention specifically to Yates' answers on cross-examination. (*Id.* at 1064:5.) The court ruled that there was no due process violation with respect to Yates' testimony. Specifically, the court found that what transpired during Yates' cross-examination was "entirely in the normal course of an adversary process." (*Id.* at 1065:3–4.) The court concluded that Yates' answers elicited during cross-examination, while probative as to credibility, did not fit the actual definition of perjury. (*Id.* at 1071:8–13.)

4

## III. STANDARDS OF REVIEW

### A. Motion for New Trial

Upon a defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Motions for new trial in the interests of justice are committed to the sound discretion of the district court. *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003). Under Rule 33(a), "[a] district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (internal quotation marks omitted).

### B. Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 provides that a defendant may make a motion for judgment of acquittal, based on insufficiency of evidence to sustain a conviction, "after the government closes its evidence," "after the close of all the evidence" or "after a jury verdict." Fed. R. Crim. P. 29(a), (c)(1). If the court reserves decision on said motion, "it must decide the motion on the basis of the evidence at the time the ruling was reserved." Rule 29(b). In ruling on a motion for judgment of acquittal, the court must "view the evidence in the light most favorable to the verdict, and must presume that the jury has properly carried out its functions of evaluating credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Lacy*, 446 F.3d 448, 451 (3d Cir. 2006). Courts must be "vigilant not to usurp the role of the jury by weighing credibility and assigning weight to the evidence or by substituting its judgment for

5

that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). The defendant bears a "very heavy burden" when challenging the sufficiency of the evidence supporting a jury verdict. *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir.1995). A "finding of insufficiency should 'be confined to cases where the prosecution's failure is clear.'" *United States v. Smith*, 294 F.3d 473, 477 (3d Cir. 2002) (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)).

## IV.  DISCUSSION

In their respective post-trial motions, Singletary and Harmon assert that a due process violation occurred because Yates provided perjured testimony. (D.I. 156 at ¶ 13.) Defendants claim the alleged perjury raises a due process concern because the "Government's indifferent attitude towards Yates' perjury indicated that Yates had permission to lie in order to assist the Government's case and that the Government would look the other way." (*Id.*)

To succeed on their due process violation, the Defendants have the burden of establishing that: 1) Yates committed perjury; 2) the Government knew or should have known of the perjury; 3) the perjury went uncorrected; and 4) there is a reasonable likelihood that the false testimony could have affected the verdict. *See United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008). "A witness commits perjury if he or she gives false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.*

The Defendants assert that "in effect, suggesting that Yates' testimony had immunity because he would not be asked to correct his perjury, the Government induced the jury to believe that Yates' testimony should be accepted uncritically, violating [defendants'] right to due process and a fair trial." (D.I. 156 at ¶ 14.)

6

The court is unpersuaded by the Defendants' attempt to re-litigate this issue. As an initial matter, the court does not consider Yates' asserted untruthful statements material to the guilt or innocence of the Defendants. In addition, the statements elicited by Yates on cross-examination did not produce a reasonable likelihood that the verdict would be affected. In addition, the final jury instructions, agreed to by all parties, instructed the jury to weigh credibility of various sources as they saw fit.[2] (Tr. 1091:25-1092:1–5.) Any bearing the alleged inconsistent statements on the jury's verdict was taken into account in weighing credibility. As such, the court finds that the interests of justice do not mandate a new trial under Rule 33.

In her Motion for Order of Acquittal, Harmon proposes a new legal standard to address the situation in which "the Government's cooperating co-defendant witness falsely testifies during cross examination yet whose testimony would need to be credit[ed] and sufficient in order to convict a co-defendant at trial." (D.I. 157 at 12.) Harmon suggests that "this matter is similar to how the Third Circuit analyzes Motions for Judgment [sic] of Acquittals in determining the sufficiency of the evidence for cases involving confession evidence that is essential to a finding of guilt." (*Id.* at 13.) Under this proposed standard, the court would require the government to corroborate and demonstrate the trustworthiness of the testimony of a co-defendant such as Yates' in order for a guilty verdict to be found legally sufficient. (*Id.* at 13–14.)

The court declines to adopt Harmon's proposed standard. Instead, the court follows established Third Circuit case law which requires no corroboration of a co-conspirator's testimony

---

[2] The court specifically instructed the jury as to Yates' plea agreement with the government, stating:
> In evaluating Phillip Yates' testimony, you should consider this factor along with the others I have called to your attention. Whether or not his testimony may have been influenced by the plea agreement is for you to determine. You may give his testimony such weight as you think it deserves.

(Tr. 1089:16–25-1090:1–16.)

7

at trial. *United States v. Perez*, 280 F.3d 318, 344 (3d Cir. 2002). "This is particularly the case where the defense has ample opportunity to cross-examine the Government's witnesses . . . . ." *Id.* (internal citations and quotations omitted). Because the testimony of a co-conspirator is an adequate basis for conviction, it "must be accepted as true for the purpose of determining the sufficiency of the evidence." *United States v. Vazquez*, 174 Fed. Appx. 700, 703 (3d Cir. 2006).

Viewing the evidence in the light most favorable to the Government, the court concludes that a reasonable jury could have found Harmon guilty of Count One—conspiracy to commit armed bank robbery—and Count Two—armed bank robbery and aiding and abetting. The evidence at trial established the Harmon drove the getaway vehicle to drop off Yates and Pierce at a location convenient to entering the bank with minimal detection. Harmon then drove to a prearranged location to wait for Yates and Pierce to exit the bank and Harmon drove away from the police in an apparent attempt at evading capture. The Government's evidence addressed each of the elements of the crimes at issue. Thus, the guilty jury verdicts were reasonable in light of the evidence presented.

## V. CONCLUSION

For the reasons stated, the Defendants' motions for judgment of acquittal and new trial are denied. An appropriate order shall issue.

Dated: April 20, 2015

UNITED STATES DISTRICT JUDGE