IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DASHUNDA L. HARMON and )
VANESSA SINGLETARY, )
)
     Movants/Defendants, )
)
     v. )
)
)
UNITED STATES OF AMERICA, )
)
     Respondent/Plaintiff. )

Crim. Act. No.   13-74-CFC-03
               13-74-CFC-04
Civ. Act. No.    17-1651-CFC
               17-1652-CFC

## MEMORANDUM OPINION[1]

---

Dashunda L. Harmon. *Pro se* Movant.
Vanessa Singletary. *Pro se* Movant.

Whitney Cloud.  Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware.  Attorney for Respondent.

---

March 26, 2021
Wilmington, Delaware

---

[1]This case was originally assigned to the Honorable Gregory M. Sleet, and was re-assigned to the undersigned judge on September 20, 2018.

CONNOLLY, UNITED STATES DISTRICT JUDGE:

## I.   INTRODUCTION

Movants Dashunda Harmon and Vanessa Singletary (collectively, "Movants")

have filed identical Motions to Vacate, Set Aside, or Correct Sentence pursuant to 28

U.S.C. § 2255 ("Motion").  (D.I. 226 in *Harmon*, 13cr74-CFC-03; D.I. 226 in *Singletary*,

13cr74-CFC-04)  The United States filed an Answer in Opposition.  (D.I. 243 in *Harmon*,

13cr74-CFC-03; D.I. 243 in *Singletary*, 13cr74-CFC-04)  Movants filed identical Replies

("Reply").  (D.I. 244 in *Harmon*, 13cr74-CFC-03; D.I. 244 in *Singletary*, 13cr74-CFC-04)

Closer examination of the Motion reveals that it is actually a combined Motion for New

Trial Pursuant to Federal Rule of Criminal Procedure 33 and a Motion to Vacate

Sentence Under § 2255.  For the reasons discussed, the Court will deny Movants'

combined Rule 33 Motion for New Trial/§ 2255 Motion without holding an evidentiary

hearing.[2]

## II.   BACKGROUND

> A 2013 grand jury indictment charged both [Movants] with conspiracy to commit armed bank robbery, aiding and abetting armed bank robbery, and use of a firearm in relation to a crime of violence. At trial, the government relied extensively upon the testimony of Phillip Yates, one of the two other participants in the robbery. Yates testified that he and Larry Pierce developed a plan to rob the M&T Bank and solicited [Movant Singletary] to serve as a getaway driver. [Movant Singletary] then recruited her friend [Movant Harmon] to join in the planned robbery. [Movants] drove Pierce and Yates to the designated rendezvous point in Yates's vehicle, at which point the two men retrieved latex gloves and handguns from the car and set off on foot to rob the bank. According to Yates, [Movants] agreed to wait at the rendezvous point while Pierce and Yates robbed the bank, and then to drive them to safety; in exchange, Pierce and Yates agreed to pay them

---

[2]For the most part, the relevant D.I. numbers in each of the Movant's § 2255 proceeding are identical.  Therefore, unless needed for proper identification, the Court will only refer to a single D.I. number without identifying the specific case number.

$500 each. Yates successfully made it back to the car, but after detecting significant police presence in the area, he exited the car and was later apprehended on foot. Subsequently, [Movant Singletary] called 911 and claimed that someone had held a gun to her head and forced both her and [Movant Harmon] to drive.

Yates confessed to the robbery and testified extensively against [Movants] at trial. While testifying, Yates was questioned at length regarding drug-dealing activities that he allegedly engaged in during the time period that he planned and executed the robbery. Yates denied these allegations. Defense counsel attempted to impeach Yates with text messages he sent referring to illegal activity. Subsequently, defense counsel informed the District Court that they believed that Yates had perjured himself in denying the drug-dealing allegations. The District Court met with all parties and determined that while calling Yates's credibility into question was appropriate, there was no basis to believe that the government had knowingly suborned perjury, characterizing what transpired during Yates's cross-examination as "entirely in the normal course of an adversary process." Defense counsel then fully explored the topic of Yates's credibility in their closing statements.

[Movants] were convicted on both the conspiracy and aiding and abetting bank robbery charges. After the verdicts were entered, [Movants] both moved for a new trial, arguing that they had been prejudiced by the government's failure to acknowledge and correct Yates's false trial testimony. [Movant Harmon] also brought a sufficiency challenge under Federal Rules of Criminal Procedure 29(c) and 33, arguing (1) there was insufficient evidence to sustain the jury's verdict and (2) a heightened standard of sufficiency was required because of the risk of an unlawful conviction based upon the false testimony of a co-conspirator. The District Court denied these motions, finding that: (1) Yates's asserted untruthful statements were not material to the case against [Movants] and did not establish a "reasonable likelihood that the verdict would be affected"; (2) the court had instructed the jury to weigh the credibility of various sources, including Yates; and (3) a reasonable jury could have found [Movant Harmon] guilty on both counts.

*United States v. Harmon*, 681 F. App'x 152, 154–55 (3d Cir. 2017).

In December 2015, as Movants prepared to file their appeals, defense counsel

for Movant Singletary was contacted by an inmate not affiliated with Movants' case,

Herbert Aiken, who claimed to have spoken to Phillip Yates prior to Movants' trial.
According to Aiken, Yates told Aiken of his intent to lie at Movants' trial.  (D.I. 226-1 at
23-25; D.I. 243-4 at 2)  After asking Aiken to confirm his account in writing and receiving
that letter, defense counsel for Movant Harmon filed Aiken's letter *ex parte* and under
seal in this Court on January 29, 2016, asking that both attorneys for Movants be
reappointed as defense counsel in order to investigate Aiken's account.  (D.I. 243-4 at
2-3; D.I. 243-5 at 2-3)  Defense counsel specifically requested reappointment for the
purpose of evaluating whether the allegations in Aiken's letter met the standards for a
Rule 33 motion for new trial.  (D.I. 243-4 at 3; D.I. 243-5 at 3)  Defense counsel were
not reappointed to represent Movants.

Meanwhile, on February 8, 2016 (eleven days after filing Aiken's letter with this
Court), in their appointed capacity as appellate counsel, Movants' attorneys filed
opening briefs on behalf of Movants with the Court of Appeals for the Third Circuit.  (D.I.
243 at 11)  The appellate briefs did not reference Aiken's letter.

The Government filed its appellate response on March 31, 2016.  (D.I. 243 at 11)
Prior to filing Movant Harmon's reply in the Third Circuit, her defense/appellate counsel,
Mr. Koyste, notified Movant Harmon that Judge Sleet had not reappointed him to
investigate Aiken's letter, and enclosed a copy of the opening briefs filed in the Third
Circuit.  (D.I. 226-1 at 27; D.I 243-5 at 3-4)  Mr. Koyste also explained in a phone call
with Movant Harmon why he could not include Aiken's letter in the brief to the Third
Circuit.  (D.I. 243-5 at 4)  The information was eventually shared between Movants.
(D.I. 226 at 10)

3

The Third Circuit denied Movants' consolidated appeal on March 2, 2017, affirming their judgments of conviction. *See Harmon*, 681 F. App'x at 156. Movant Harmon petitioned the Supreme Court for certiorari, which was denied on October 2, 2017. *See Harmon v. United States*, 138 S.Ct. 142 (Table), 2017 WL 2505738 (2017).

## III.    DISCUSSION

Movants originally filed the instant Motion as a "Motion for Relief from a Judgment of the United States Court of Appeals for the Third Circuit Pursuant to Fed. R. Civ. P. Rule 60(b)(l), (2), and (6)." (D.I. 226) The Government responded to the Motion on October 26, 2017, noting the inapplicability of Federal Rule of Civil Procedure 60(b) as a form of relief, and requesting that the Court issue a notice to Movants to elect among remedies, including having their motion recharacterized as a motion pursuant to 28 U.S.C. § 2255. (D.I. 229) The Court issued such an election form to Movants on November 15, 2017. (D.I. 230) Movants responded on November 28, 2017, consenting to the motion being recharacterized as a motion for relief under 28 U.S.C. § 2255. D.I. 232)

The instant Motion asks the Court to reconsider prior decisions made in Movants' case (including, presumably, Judge Sleet's denial of their post-trial Rule 29 motion for acquittal and Rule 33 motion for new trial) in light of "newly discovered evidence," namely, Aiken's letter. Movants essentially assert that Aiken's letter proves their consistent contention that Phillip Yates, the co-defendant who testified at trial concerning their involvement in the robbery, lied about while testifying in order to

4

receive cooperation credit.[3]  Relying on Aiken's letter, Movants appear to assert three grounds for relief in their Motion: (1) defense counsel provided ineffective assistance by failing to investigate the assertions in Aiken's letter more thoroughly; (2) the same defense counsel, while acting as appellate counsel, provided ineffective assistance by failing to present the allegations in Aiken's letter on appeal; and (3) Aiken's letter "demonstrates their innocence" "because they had only agreed to socialize with their codefendants for the purpose of 'stripping' and 'getting high,' and [] they had no knowledge of any plan to rob a bank or [] intent to rob a bank."[4]  (D.I. 226 at 4-14)

To the extent Movants allege ineffective assistance of counsel, they have properly raised their allegations in a § 2255 Motion.  *See Massaro v. United States,* 538 U.S. 500 (2003).  Nevertheless, to the extent Movants seek relief independent of their ineffective assistance of counsel claims based on "newly discovered evidence," the Court construes their request to be a Motion for New Trial filed pursuant to Federal Rule

---

[3]Movants specifically assert: "Newly Discovered Evidence exist[s] [Aiken's letter] that avers that [Movants'] codefendant, and the government's primary witness, Yates, actively engaged in the knowing resolve to commit perjury, by testifying falsely against [Movants], at [Movants'] trial, in what has been stated to be Yates' calculated action to achieve a reduced prison sentence for his leading role in orchestrating a bank robbery." (D.I. 226 at 4)

[4]The Motion initially discusses how the reference in Aiken's letter that Yates was a drug dealer bolstered the argument made in Movants' case that Yates had lied about his drug-dealing activities while testifying, and was relevant for showing that Movants believed the guns they saw in the car prior to the robbery were related to Yates' drug dealing business rather than potential instruments for furthering the robbery.  (D.I. 226 at 7-8)  The Court does not view this convoluted and tenuous argument as the main focus of the Motion.  Nevertheless, to the extent Movants' theory about Aiken's letter bolstering defense counsels' argument regarding Yates' alleged perjury concerning his drug dealing activities is the primary focus of the Motion, the Court concludes that it does not warrant a new trial.  Using Aiken's letter as a way of further demonstrating Yates' alleged misrepresentations about his drug dealing is cumulative, impeaching, and not likely to produce an acquittal.

of Criminal Procedure 33. *See, e.g., United States v. Felder*, 529 F. App'x 111, 112-13 (3d Cir. June 19, 2013) (affirming the district court's recharacterization of a *pro se* motion as a Rule 33 motion for new trial); *United States v. Bales*, 1997 WL 825245, at *3 (E.D. Pa. Dec. 19, 1997) (construing some claims in a *pro se* filing as a Rule 33 motion, and other claims as a § 2255 motion).  Both requests are timely filed under Rule 33 and § 2255.  *See* Fed. R. Crim. P. 33 (b)(1) ("Any motion for a new trial grounded on newly discovered evidence must be filed within three years after the verdict."); 28 U.S.C. § 2255 (f)(1) (establishing a one-year deadline for filing a § 2255 motion).

### A. Relevant Portions of Aiken's Letter

In his letter, Aiken explains that he and Yates were in prison together between 2013-2015, and that he had known Yates, a heroin and crack cocaine dealer, since 2008.  (D.I. 243-4 at 7, 9)  Although charged in prison for different crimes, he and Yates were represented by same attorney and were being prosecuted by the same Assistant United States Attorney ("AUSA").  (*Id.*)  While they were discussing their individual cases, Yates stated that he was facing a lot of prison time.  (D.I. 243-4 at 7)  Yates then told Aiken about how he was "going to cooperate against his co-defendants to get his time reduced."  (*Id.* at 8)  Yates also told Aiken that his defense counsel and the AUSA "were working together" and "encouraged him to tell the truth but to also lie [about] his codefendants because of [a] lack of evidence, by his testimony it would help the Government convict any of his codefendants if they wished to go to trial." (*Id.*)  More specifically, the letter asserts the following information:

> [Yates] told me I should cooperate, and if I do, I would
> get a low end sentence or time served.  [Yates] told

6

> me that our lawyer would visit with him just to go over the information and to practice with him to allow him to be successful at keeping his story as straight as possible.
>
> [Yates] told me he was focusing the blame on his codefendants. [Yates] told me even though the two girls of whom he was going against on his case, he said they really had nothing to do with the bank robbery. He said they both had no clues or idea of what was going on. [Yates] said the two girls only was with them because they thought they was going to get high and drink for free.
>
> [Yates] said the less they knew the more advantage he had over them to drive or do whatever he wanted them to do for them both.

(D.I. 243-4 at 8)  At the end of the letter, Aiken states: "If by me getting involved in this case hurts my pending § 3582(c) (2) or § 2255 motion, I would and will not speak to anyone concerning these issues." (D.I. 243-4 at 9)

## B. Rule 33 Analysis

Rule 33 of the Federal Rules of Criminal Procedure provides that a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Five requirements must be met before a court may grant a new trial on the basis of newly discovered evidence:

> (a) the evidence must be in fact newly discovered, *i.e.* discovered since trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

7

*United States v. Quiles*, 618 F.3d 383, 388–89 (3d Cir. 2010). Failure to satisfy any one of the aforementioned elements is fatal to a motion for a new trial. *See United States v. Cimera*, 459 F.3d 452, 458 (3d Cir. 2006).

The Government concedes that Aiken's letter is newly discovered since trial, and also material to the issues involved. (D.I. 243 at 21 n.8) Nevertheless, for the reasons set forth below, the Court concludes that Aiken's letter does not warrant granting a new trial, because the letter is only cumulative impeachment evidence and Movants have not demonstrated that the letter would probably result in an acquittal.

### 1. Aiken's letter is merely impeaching and cumulative

As a general rule, a new trial will not be granted under Rule 33 when the new evidence is merely cumulative or impeaching. *See United States v. Mensah*, 434 Fed. App'x 123, 126 (3d Cir. 2011). "Evidence that is impeaching lacks an 'exculpatory connection' to the defendant's conduct. Cumulative evidence is that which merely reiterates or reinforces testimony or evidence that the jury has already heard." *Id.* Notably, however, newly discovered evidence can warrant a new trial if that evidence, though not exculpatory, creates severe doubt on the truthfulness of the critical inculpatory evidence that was introduced at trial. *See Quiles*, 618 F.3d at 393.

Reviewing Aiken's letter within the foregoing legal framework demonstrates that it is both impeaching and cumulative. First, Aiken's letter constitutes impeachment evidence because it calls into question Yates' testimony and credibility. *See United States v. Whoolery*, 625 F. App'x 24, 25-26 (3d Cir. 2015) (finding post-trial affidavit claiming that the witness lied during trial in order to "get the deal" from the Government;

8

was "merely impeachment evidence"); *Mensah*, 434 F. App'x at 127 (affirming district court's denial of Rule 33 motion when the impeaching testimony of two inmates went against a key prosecution witness whose "credibility was already repeatedly undermined during trial.").

Second, Aiken's letter is cumulative, because the issue of Yates' credibility was thoroughly addressed during cross-examination, and the letter merely provides an additional basis on which to impeach Yates' already questionable credibility. For instance, during cross-examination, defense counsel asked Yates if he had any discussions with his own trial counsel about "strategies or things that would give [Yates] less of a sentence." (D.I. 160 at 161) Although Yates answered "no", further cross-examination revealed that, through conversations with his trial counsel, Yates understood that he might "end up receiving a 5K motion" for cooperation that could result in him receiving his minimum mandatory sentence if he testified truthfully. (D.I. 160 at 161-62) Defense counsel continued to ask Yates about conversations he had with his own trial counsel and, after the Government objected, defense counsel provided the following explanation during a sidebar conference:

> I asked about his [Yates'] understanding as to whether he was going to be charged. And he indicated that that came from [his trial counsel]. And what this shows is, this would be part of impeachment for bias, because it's his perception. I think what I am going to be hearing him saying is that he's not going to end up being charged with these additional firearms and with this investigation because of the plea agreement that was reached.

(D.I. 160 at 174)

9

As both Judge Sleet (when denying Movants' first Rule 33 motion) and the Third Circuit (on direct appeal) recognized, defense counsel thoroughly impeached Yates based on his conflicting accounts of his own drug-dealing (an immaterial issue), and the jury specifically received an instruction relating to Yates' credibility.  (D.I. 178 at 7); *Harmon*, 681 F. App'x at 155-56.  In fact, defense counsel's strategy of questioning Yates' motivation for testifying continued throughout cross-examination, culminating in an extensive discourse between the Government, defense counsel, and the Court concerning the issue of Yates's credibility and possible perjury in context with his plea agreement and possible 5K motion.  (D.I. 163 at 110-120)  Near the end of that discussion, Judge Sleet stated: "I do want to get back to my caution, to both counsel, to be careful around the use of that legal term, perjury.  It is a legal term, one that I don't intend to give definition to to this jury, and, quite frankly, I don't think is an issue.  Credibility is an issue."  (D.I. 163 at 120)  Defense counsel replied, "I will not use the word perjury.  I will use 'false testimony.'  I will use other terms, such as 'fib,' is at term that I like to use."  (D.I. 163 at 121)  Judge Sleet responded, "You can call him a liar," and then stated

> Let's make sure, should it come to pass that the Third Circuit needs to look at this, what I am saying is that [perjury] is a legal term. There has to be -- there is still a fair gap between what I perceive to have happened in this courtroom and what is actually the definition of perjury.
>
> We can talk about one particular thing where the witness was clearly untruthful, I think, or less than credible, at least. That was the discussion about the texting, and whether that was a drug transaction or not. He said, "It was my phone." He didn't say somebody else has gotten it. The jury is free to

10

> conclude that he wasn't credible on that subject, as to whether he is a drug dealer.
>
> But whether he perjured himself? That's a different question, I think. But that's fair game. Okay, things like that.

(D.I. 163 at 121)

The cumulative nature of Aiken's letter is further demonstrated by the fact that, when denying Movant Harmon's request for judgment of acquittal within Movants' first Rule 33 motion, Judge Sleet held that there was sufficient evidence to support her conviction for conspiracy to commit armed bank robbery and her conviction for armed bank robbery and aiding and abetting. (D.I. 178 at 8) More specifically, Judge Sleet opined:

> The evidence at trial established that [Movant] Harmon drove the getaway vehicle to drop off Yates and Pierce at a location convenient to entering the bank with minimal detection. [Movant] Harmon then drove to a prearranged location to wait for Yates and Pierce to exit the bank and [Movant] Harmon drove away from the police in an apparent attempt at evading capture. The Government's evidence addressed each of the elements of the crimes at issue. Thus, the guilty jury verdicts were reasonable in light of the evidence presented.

(D.I. 178 at 8) In sum, Aiken's letter constitutes cumulative impeachment evidence and neither undermines critical inculpatory evidence nor has the requisite exculpatory connection to the offenses of conviction to warrant a new trial.

## 2. Probability of producing an acquittal

Movants have not demonstrated that "the newly discovered evidence would probably produce an acquittal" at a new trial, because Aiken's letter is unreliable on multiple levels. *Cimera*, 459 F.3d at 458. As an initial matter, "courts ... look upon after

11

discovered evidence or recantations with skepticism and do not generally grant new trials on such grounds." *United States v. Meyers*, 484 F.2d 113, 116 (3d Cir. 1973); *see Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012) (discounting the letter of a prisoner witness who admitted to having lied once before); *see also United States v. Rodriguez*, 673 F. App'x 914, 916-17 (11th Cir. 2016) (disregarding the post-trial affidavit of a defense witness who contradicted trial testimony as insufficient to support an actual innocence claim and suspect in terms of delayed presentation); *United States v. Austin*, 387 F. Supp. 540, 543 (M.D. Pa. 1974) (questioning the reliability of a post-trial affidavit of a witness's acquaintance without the witness's recantation). Aiken's contention about the government encouraging Yates to lie in order to convict Movants is highly unreliable and also fails to diminish the other evidence establishing the elements of the crimes for which Movants were convicted. *See, e.g., Wadlington v. United States*, 428 F.3d 779, 782-84 (8th Cir. 2005) (after considering the post-trial affidavits of various individuals impugning the trial testimony of a cooperating defendant, where one affidavit alleged that the government stated the individuals could get a reduction in their sentences if they made something up about Wadlington, the court ultimately concluded, in the context of an actual innocence claim, that these affidavits did not constitute "'new reliable evidence' making it more likely than not that no reasonable juror would have convicted [Wadlington].")

Beyond the general suspicion post-trial evidence engenders, Aiken's letter is even more unreliable given its proponent. Aiken pled guilty to multiple gun-related offenses in federal court in 2014 and, as previously explained, the AUSA in his case

was the same AUSA who prosecuted the government's case against Movants.  Just

weeks before the January 5, 2016 letter he wrote to defense counsel, Aikens filed a §

2255 motion in his own case claiming that "[t]he Government allowed false and

misleading testimony from [other defendants] to be used for the Grand Jury to indict Mr.

Aiken, also the Government forced Mr. Aiken through his Attorney to plead guilty to

false information." (*See United States v. Aiken*, 13-cr-32-RGA, D.I. 149, Motion to

Vacate Sentence Under 28 U.S.C. § 2255, at 5 (filed Dec. 14, 2015)).  The similarity

between the alleged prosecutorial subornation of perjury that Aiken's described in his

own case and the alleged prosecutorial subornation of perjury purportedly described by

Yates as occurring in Movants' case suggests a common tactic on Aiken's part to

promote his own self-interest.  (*See* D.I. 226-1 at 24)  Tellingly, Aiken's letter in this

proceeding concludes with a refusal to testify or further speak to anyone should such an

action impact Aiken's own case.[5]  (D.I. 226-1 at 25)  This qualified statement from a

biased source simply does not meet the standards of reliability sufficient to merit

granting a new trial.

Finally, weighing Aiken's unreliable letter against the other evidence at trial

demonstrates that its introduction would not likely result in an acquittal, because

Movants were not convicted solely on the basis of Yates' testimony.  The defense

theory, as expressed through Movant Singletary's testimony, was that Movants were

unaware of the robbery plan and initially accompanied Yates and Pierce only because

they expected to perform an exotic dance for payment.  According to Movant Singletary,

---

[5]Specifically, Aiken states: "If by me getting involved in this case hurts my pending §
3582(c)(2) or § 2255 motion I would and will not speak to anyone concerning these
issues." (D.I. 226-1 at 25)

once the robbery was over, she and Movant Harmon were hostages and forced to drive the getaway car at gunpoint.

In contrast, Yates testified about Movants' knowing involvement prior to the crimes, and his description of the post-robbery events as a mutual effort by Movants and himself to find Pierce and escape from the police was consistent with the eyewitness testimony of other witnesses. Notably, despite defense counsel's numerous challenges to Yates' credibility during the trial, the jury found the testimony provided by Yates and the corroborating witnesses more credible than the defense theory. *See, e.g., Harmon*, 681 F. App'x at 156 (3d Cir. 2017) ("Additionally, the government presented several eyewitnesses, whose testimony, although circumstantial, corroborated Yates's story and tended to disprove Harmon and Singletary's version of the events."). The fact that the jury reached its guilty verdict after it was instructed on the issue of Yates' credibility in the following manner further demonstrates that the introduction of Aiken's letter would probably not result in an acquittal:

> You have heard evidence that Phillip Yates is an alleged co-conspirator, that is, someone who says he participated in the crimes charged, has made a plea agreement with the government.
>
> His testimony was received in evidence and may be considered by you. The government is permitted to present the testimony of someone who has reached a plea bargain with the government in exchange for his or her testimony, but you should consider the testimony of Phillip Yates with great care and caution. In evaluating Phillip Yates's testimony, you should consider this factor along with the others that I have called to your attention. Whether or not his testimony may have been influenced by the plea agreement is for you to determine. You may give his testimony such weight as you think it deserves.

14

You must not consider Phillip Yates's guilty plea as any evidence of the defendants' guilt, that is, either of these defendants, as evidence of their guilt. His decision to plead guilty was a personal decision about his own guilt. Such evidence is offered only to allow you to assess the credibility of the witness, Mr. Yates; to eliminate that any concern that either of the defendants has been singled out for prosecution; and to explain how the witness came to possess detailed firsthand knowledge of the events about which he testified. You may consider Phillip Yates's guilty plea only for these purposes.

*   *   *

If you believe that a witness knowingly testified falsely concerning any important matter, you may distrust the witness' testimony concerning other matters. You may reject all of the testimony or you may accept such parts of the testimony that you believe are true and give it such weight as you think it deserves.

(D.I 163 at 139-40, 141-42)

In sum, Aiken's letter, or, if it could be procured, Aiken's testimony against Yates at trial, simply is not "of such a nature, as that, on a new trial. .. [it] would probably produce an acquittal." *Cimera*, 459 F.3d at 458. The information in Aiken's letter essentially duplicates the already known information concerning Yates' self-interest in testifying against Movants, the jury was properly instructed that it could consider Yates' personal interest in assessing credibility, and there was other evidence to support Yates' testimony regarding the events that occurred after the robbery. Thus, to the extent Movants seek a new trial on the basis of the allegations in Aiken's letter, the Court will deny the request.

15

## C. Section 2255 Analysis

Having concluded that Aiken's letter does not warrant a new trial, the Court now turns to Movants' allegations that defense and appellate counsel's actions with respect to Aiken's letter amounted to constitutionally ineffective assistance warranting § 2255 relief.  As a threshold matter, the Court must determine if Movants' challenges under § 2255 are moot, since they are no longer in custody or serving any portion of their sentences.  *See North Carolina v. Rice*, 404 U.S. 244, 246 ("mootness is a jurisdictional question"); *Chong v. Dist. Dir., INS*, 264 F.3d 378, 383–84 (3d Cir. 2001).  Pursuant to Article III, Section 2, of the United States Constitution, federal courts can only consider ongoing cases or controversies. *Lewis v. Continental Bank, Corp.*, 494 U.S. 472, 477–78 (1990); *United States v. Kissinger*, 309 F.3d 179, 180 (3d Cir.2002) (finding that an actual controversy must exist during all stages of litigation).  "[O]nce a litigant is unconditionally released from criminal confinement, the litigant [can only satisfy the case-and-controversy requirement by] prov[ing] that he or she suffers a continuing injury from the collateral consequences attaching to the challenged act,"[6] "that is likely to be redressed by a favorable judicial decision."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  Notably, however, when a habeas petitioner challenges her underlying conviction, and she is released during the pendency of her habeas petition, federal courts presume that "a wrongful criminal conviction has continuing collateral consequences" sufficient to satisfy the injury requirement.  *Spencer*, 523 U.S. at  8; *see Steele v. Blackman*, 236 F.3d 130, 134 n. 4 (3d Cir.2001).

---

[6]*Kissinger*, 309 F.3d at 181.

Movants' supervised release expired in July 2018, during the pendency of this proceeding. Nevertheless, since Movants challenge their underlying convictions, their § 2255 Motion is not moot. The Court will therefore proceed to consider whether Movants' allegations of ineffective assistance warrant relief under § 2255.

As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first *Strickland* prong, Movants must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. In evaluating an attorney's conduct, a court must avoid "the distorting effects of hindsight" and must "evaluate the conduct from counsel's perspective at the time." *Id.* at 687. Under the second *Strickland* prong, Movants must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). Both *Strickland* prongs must be satisfied in order for Movants to successfully show that defense counsel rendered constitutionally ineffective assistance, and the Court can choose which prong to address first. *See Strickland,* 466 U.S. at 668. The *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689.

### 1. Claim One: Defense counsel's failure to investigate Aiken's letter

Within four days of Movants' guilty verdicts, defense counsel requested, and were granted, an extension of time to file post-trial motions pursuant to Federal Rules of Criminal Procedure 29 and 33.  The Order granting the extension stated "[Movants] shall file any post-conviction motions pursuant to [] [Rules] 29 and 33, on or before Friday, January 23, 2015."  (D.I. 147 at 1; D.I. 148 at 1)  Movant Harmon filed her motion for acquittal/new trial on January 23, 2015.  (D.I.157 in Harmon, 13cr74-03)  Movant Singletary filed her motion for new trial on January 23, 2015.  (D.I. 156 in Singletary, 13cr74-04)  The motions were denied on April 28, 2015.  (D.I. 178; D.I. 179)  After sentencing, Movants filed timely notices of appeal in July 2015.  (D.I. 194 & D.I. 195 in *Harmon*, 13cr74-3; D.I. 193 & D.I. 196 in *Singletary*, 13cr74-4)

On or around January 11, 2016, after Movants' appeals had been pending approximately six months, defense counsel for both Movants received Aiken's letter.  (D.I. 243-4 at 3)  On January 29, 2016, defense counsel for Movant Harmon filed an *ex parte* motion in this Court seeking an order re-appointing counsel for both Movants to determine whether the Aiken letter warranted filing a motion for a new trial.  (D.I. 243-4 at 3; D.I. 243-5 at on 2)  Counsel were not re-appointed to represent Movants in this proceeding, and they did not investigate the allegations in Aiken's letter or file motions for new trial.

In their first Claim for relief under § 2255, Movants contend that defense counsel were ineffective because they failed to investigate the allegations in Aiken's letter and/or failed to file a Rule 33 motion for new trial based on Aiken's letter.  Notably, since

18

Aiken's letter was written after trial, Movants do not (and cannot) claim that defense counsel were ineffective in failing to interview Aiken (whose affiliation with Yates was unknown) before or during trial, nor do they claim that defense counsel failed to challenge Yates' credibility during trial. Instead, Movants' argument focuses on the post-trial consequences of defense counsel's actions.

With respect to the performance prong of *Strickland*, defense counsel's "particular decision not to investigate [further] must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Here, defense counsel timely followed up on Aiken's contention concerning Yates' alleged post-trial statements by: (1) asking Aiken to write a letter detailing the content of Aiken's initial telephonic tip (D.I. 242-4 at 2); (2) notifying the Court of the letter and asking for the Court's leave to be reappointed as trial counsel in order to investigate the appropriateness of filing a Rule 33 motion for new trial (D .I. 226-1 at 38-40; D.I. 243-5 at 2-3); and (3) informing Movants of their inability to pursue the matter further without reappointment. (*See* D.I. 226 at 10; D.I. 226-1 p.27; D.I. 243-5 at 3) These actions were objectively reasonable.

Defense counsel also acted in an objectively reasonable manner in requesting to be reappointed as trial counsel and in timely notifying Movants of counsel's inability to further investigate absent such reappointment. Though the Third Circuit has not directly decided this issue, most circuits have held that a Rule 33 motion filed after the fourteen-day window for seeking appellate review is a collateral challenge separate from the direct appeal; therefore, a defendant's Sixth Amendment right to counsel does not

19

automatically attach. *See Johnson v. United States*, 246 F.3d 655, 658 (6th Cir. 2001).[7]

Given this precedent, defense counsel's act of seeking reappointment and requesting

clarification of any ongoing duties as appointed counsel at the trial stage was not only

reasonable but prudent.

With respect to the prejudice prong of *Strickland*, Movants cannot demonstrate a

reasonable probability that the result of any post-trial proceeding would have been

different but for defense counsel's failure to inquire further into Aiken's letter.  On April

8, 2016, defense counsel for Movant Harmon unequivocally informed her that, since

defense counsel had not been reappointed to represent Movants with respect to

pursuing any post-trial motions, counsel could not conduct any investigation into Aiken's

allegations.  The relevant excerpt of defense counsel's letter is set forth below:

> As a result of this new information, I wrote a letter to Judge
> Sleet requesting that he reappoint me to investigate Mr.
> Aiken's assertions and to possibly file a new motion for a
> new trial. However, it has been over a month and I have yet
> to be reappointed making it clear that the Court is not going
> to reappoint me in relation to this matter. As such, you are

---

[7] *See also United States v. Williamson*, 706 F.3d 405, 417 (4th Cir. 2013) (concluding
that there is no Sixth Amendment right to counsel for a Rule 33 motion filed more than
fourteen days after the district court enters the judgment of conviction, because such a
motion is collateral); *United States v. Redd*, 562 F.3d 309, 312-13 (5th Cir. 2009) ("A
rule 33 motion filed more [than] ten days after the entry of judgment ... is a collateral
attack and not a direct appeal."); *Barnes v. United States*, 437 F.3d 1074, 1079 (11th
Cir. 2006) (noting that defendant's "motion for a new trial, even though it was filed while
his direct appeal was pending, did not constitute a continuation or an extension of that
direct appeal, but was .. . a collateral motion on his conviction that the district court had
jurisdiction to entertain notwithstanding the fact that [defendant's] direct appeal was
pending"); *Trenkler v. United States*, 268 F.3d 16, 20 (1st Cir. 2001) ("After final
conviction the appointment of counsel must rest in the discretion of the court."). *But see
Kitchen v. United States*, 227 F.3d 1014 (7th Cir. 2000) (noting that a defendant has a
Sixth Amendment right to counsel for a Rule 33 motion prior to a decision on the direct
appeal, and concluding that failure to appeal the outcome of a Rule 33 hearing and
consolidate appeals was deficient performance without prejudice).

> going to need to follow up on this on your own or retain
> another attorney to do so.
>
> Please understand that while I still represent you on your
> direct appeal before the Third Circuit Court of Appeals, the
> District Court case is closed and my court appointed
> representation is concluded in the District Court.

(D.I. 226-1 at 27)

In addition to the letter, defense counsel sent Movant Harmon a copy of Movants'

appellate opening brief and appendix, and the Government's answering brief. (D.I 226-

1 at 27-33) Because Movants' appellate opening brief did not mention the allegations in

Aiken's letter, Movants were aware that they either had to obtain new representation to

further investigate Aiken's allegations or investigate the matter themselves.

Significantly, upon receipt of defense counsel's April 2016 letter, Movants still

had until December 2017 to file a timely Rule 33 motion for new trial based on newly

discovered evidence. *See* Fed. R. Crim. P. 33 (b)(1) (stating that a Rule 33 motion for

new trial based on newly discovered evidence must be filed within three years of the

verdict). Movants filed the instant combined Rule 33 Motion for New Trial/§ 2255

Motion raising the issue of Aiken's letter on September 25, 2017, months before the

expiration of the deadline applicable to Rule 33 motions. In fact, the Court has just

considered and rejected Movants' contention that Aiken's letter warrants a new trial

under Rule 33's standards. In short, defense counsel's actions did not prejudice

Movants. *See United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989) (stating that

*Strickland* "standard of proof [for prejudice] is not as high as the standard applied to a

motion for a new trial based on newly discovered evidence under Fed. R. Crim. P. 33").

21

Accordingly, the Court will deny Movant's first allegation of ineffective assistance of counsel as meritless.

### 2. Claim Two:  Appellate counsel's failure to include Aiken's letter in appeal

In Claim Two, Movants contend that appellate counsel provided ineffective assistance by failing to discuss Aiken's letter within their opening briefs on appeal or otherwise notifying the Third Circuit of the new evidence.  (D.I. 226 at 8-12)  This argument is unavailing.

Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel.  *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004).  An attorney's decision about what issues to raise on appeal is strategic,[1] and an attorney is not required to raise every possible non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).

In the appellate context, the test for prejudice under *Strickland* "is not whether petitioners would likely prevail upon remand, but whether [the court of appeals] would have likely reversed and ordered a remand had the issue been raised on direct appeal." *United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000); *see also Smith*,  528 U.S. at 287-88 (2000) (explaining that the question when determining prejudice in the appellate context is whether the issues counsel did not raise "were clearly stronger" than the issues counsel did raise).  As previously discussed, the Court has determined

---

[1]*See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

that Aiken's letter constitutes cumulative impeachment evidence that would probably not produce an acquittal. Given this conclusion, even if Aiken's letter had been introduced in Movants' appeal, there is no reasonable probability that the outcome of their direct appeal would have been different. Thus, Movants cannot satisfy *Strickland*'s prejudice requirement.

Movants also cannot demonstrate that defense counsel's performance was objectively unreasonable. Federal Rule of Appellate Procedure 10(e)(2) permits correction or modification of the record "if anything material to either party is omitted from or misstated in the record by error or accident." Fed. R. App. P. 10(e)(2). The Third Circuit Court of Appeals has interpreted the rule to allow "amendment of the record on appeal only to correct inadvertent omissions, not to introduce new evidence." *In re Adan*, 437 F.3d at 388 n.3 (denying supplementation of record with new evidence not heard by the district court). "The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court." *Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1165 (3d Cir. 1986).

Based on the foregoing, defense counsel properly understood the function of an appellate court – to consider only the record of the trial court – and, therefore, reasonably declined to present Aiken's letter to the Third Circuit in the first instance. Defense counsel also satisfied an objective standard of reasonableness by informing Movant Harmon that Aiken's letter was not included in the appellate brief. Given these circumstances, the Court will deny Claim Two because Movants have not satisfied either prong of the *Strickland* standard.

### 3. Possible claim of actual innocence

To the extent Movants assert that Aiken's letter demonstrates their actual innocence, the argument does not warrant § 2255 relief. Whether or not a freestanding claim of actual innocence is cognizable on federal habeas review remains an open question in Supreme Court jurisprudence. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993); *Reeves v. Fayette SCI*, 897 F.3d 154, 160 n.4 (3d Cir. 2018). Assuming, *arguendo*, that a free-standing claim of actual innocence is cognizable, a movant's burden on any such claim "would necessarily be extraordinarily high" and "more demanding" than that applied to gateway actual-innocence claims. *Herrera*, 506 U.S. at 416; *see also Reeves v. Fayette SCI*, 897 F.3d 154, 160 n.4 (3d Cir. 2018) (describing hypothetical freestanding actual-innocence standard as "more demanding" than that applied to gateway actual-innocence claims). To put Movants' burden of establishing a free-standing claim of actual innocence in perspective, a gateway actual innocence claim that is asserted in an effort to overcome the statute of limitations bar for habeas cases will only prevail if it is based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Aiken's letter, already determined to be merely cumulative impeachment evidence, does not satisfy the *McQuiggan/Schlup* standard. In addition, there is no indication that Yates has recanted or will recant his testimony. Hence, on the facts presented, Movants' assertion of actual innocence does not provide a basis for relief under § 2255.

24

## IV. EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. The record conclusively demonstrates that Movant is not entitled to relief under § 2255. Therefore, the Court concludes that an evidentiary hearing is not warranted.

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court concludes that Movants' Claims lack merit and is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

The Court concludes that Movant is not entitled to relief pursuant to Federal Rule of Criminal Procedure 33 or 28 U.S.C. § 2255. An appropriate Order will issue.

25